# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| Darry Wayne Hanna, | ) | Civil Action No. 4:10-70296-TLW |
| | ) | Cr. No. 4:06-828 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter comes before the Court for consideration of the <u>pro se</u> motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by the Petitioner, Darry Wayne Hanna (hereinafter "Petitioner" or "Defendant").

On August 9, 2006, a federal grand jury returned an Indictment against Petitioner and his co-defendant (and brother) Davy Hanna. (Doc. # 2). The Hanna brothers were charged with one count of conspiracy to commit mail fraud and wire fraud, nineteen substantive counts of mail fraud, and two substantive counts of wire fraud. All of these charges stemmed from an alleged conspiracy between the Hannas to murder Davy Hanna's wife, Teresa Powell Hanna, in order to collect life insurance proceeds. On August 10, 2006, Petitioner entered a plea of not guilty. (Doc. # 14). On August 26, 2006, Davy Hanna committed suicide. Petitioner proceeded to trial and on February 23, 2007, the jury found him guilty on all counts. (Doc. #96.) On May 31, 2007, the district court sentenced Petitioner to 440 years imprisonment with judgment entered on June 15, 2007. (Doc. # 108). This term consisted of 20 years as to each of Counts one through twenty-two, to run consecutively to each other. Petitioner pursued a direct appeal, and on December 2, 2009, the United

1

States Court of Appeals for the Fourth Circuit issued an opinion affirming defendant's conviction. (Docs. # 135-136). On December 1, 2010, Hanna, proceeding pro se, filed the current motion under 28 U.S.C. § 2255 asserting fourteen grounds for relief. (Doc. # 142). On March 4, 2011, the Government filed a motion for summary judgment and a supporting memorandum in opposition to Petitioner's petition. (Doc. # 153). Included as an attachment to the Government's motion for summary judgment is an affidavit from Petitioner's trial counsel, Attorney Ray Coit Yarborough. Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised by Order filed March 7, 2011 that he had thirty-four days to file any material in opposition to the Government's motion. (Doc. # 154). Petitioner filed a response on May 31, 2011. (Doc. # 161). The matter is now ripe for decision.

## 28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may file a motion in the Court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. "Generally, 28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004). In Leano, the District Court noted that this is "the proof needed

to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's pro se motion, and finds that no hearing is necessary.

### STANDARD OF REVIEW

The Government has moved for summary judgment as to all grounds raised by Petitioner. (Doc. # 153). In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. See Celotex, 477 U.S. at 324. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete

failure of proof concerning an essential element of the non-moving party's case necessarily renders

all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the

non-moving party has failed to make a sufficient showing on an essential element of her case with

respect to which she has the burden of proof. Celotex, 477 U.S. at 322-23 (1986).

## DISCUSSION

Petitioner asserts fourteen grounds for relief, the majority of which are based upon a theory

of ineffective assistance counsel and relate to matters prior to and during trial, as well as during

direct appeal. (Doc. # 142). Petitioner's claims set forth verbatim are as follows:[1]

1.  Movant was deprived effective assistance of counsel by appointed counsel's failure to move for dismissal based on double jeopardy issues.

2.  Movant was deprived effective assistance of counsel by appointed counsel's failure to move for dismissal based on vindictive prosecution.

3.  Movant was deprived assistance of counsel at a critical stage of the proceedings, i.e. at arraignment/preliminary hearing. As a consequence he was deprived of advocacy of probable cause issues.

---

[1]On December 20, 2010, Petitioner also submitted an "Addendum to Section 2255 Motion" in which he adds two additional grounds for relief:

1.  The Movant adds to his Section 2255 Motion that his court appointed trial attorney was constitutionally ineffective for failing to call Barry Prosser and Benji Byers in his defense at trial.

2.  The Movant also adds to his Section 2255 Motion that court appointed trial counsel was constitutionally ineffective for failing to move to suppress evidence regarding a shirt police found behind his entertainment center on the grounds that it was misleading and the prejudice outweighs any probative value.

The Court has reviewed these additional grounds for relief in light of the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984) and finds them to be without sufficient legal merit.

4.   Movant was deprived of effective assistance of counsel by appointed counsel's failure to move to properly sever defendants or otherwise move to require the Government to compartmentalize their case-in-chief against the Movant from their case-in-chief against Johnny David Hanna in order to prevent improper or unfair spill-over, prevent confusing and inflaming the jury, and prevent a Confrontation Clause violation.

5.   Movant was deprived of effective assistance of counsel by appointed counsel's failure to prepare and present a comprehensive defense. As a consequence appointed counsel's opening statement, cross-examinations, and closing argument were deficient and individually or cummulatively [sic] prejudiced the defense.

6.   Appointed counsel was constitutionally ineffective for failing to file pretrial motion(s) to suppress gunshot residue ("G.S.R.") evidence, and was subsequently ineffective for failing to call an independent G.S.R. expert in movant's defense.

7.   Appointed counsel was ineffective for failing to call the following witnesses in the Movants defense:
     1.   Sylvester Davis, III
     2.   Patricia Miles
     3.   Daniel Franklin Hardy

8.   Appointed counsel was ineffective for failing to move to suppress the testimony of all the Government's jailhouse informant's and subsequently was ineffective for failing to call Carl P. Locklear and Jeremaine Greene to show that the testimony of the jailhouse informant's was not worthy of confidence.

9.   Appointed counsel was ineffective for failing to object to improper comments/remarks made by the Government and was ineffective for failing to move for a mistrial based on prosecutorial misconduct.

10.   Appointed counsel was ineffective for failing to zealously advocate Motion for Judgment of Acquital.

11.   Appointed counsel was ineffective for failing to file pretrial motion(s) to correct or make proper the indictment, and subsequently ineffective for failing to question the jury instructions, and subsequently ineffective for failing to challenge the sentence.

12.   Appointed counsel was ineffective for failing to introduce at trial tape recorded conversations between Tom Redmond and David Bushacre, as well as evidence that David Bushacre commited [sic] suicide.

13.   Appointed counsel was ineffective for failing to call in the Movant's defense an independant [sic] expert in the area of bloodhound handling and tracking.

14. The Movant was deprived of effective assistance of counsel on direct appeal. Appointed Appellant counsel was ineffective by failing to raise the following issues on direct appeal:

    A. Whether the Trial Court erred in denying the multiplicity defense counsel raise[d] pretrial, at trial and at sentencing.

    B. Whether the Trial Court erred by allowing the Government to introduce an unrelated firearm at trial (Government Trial Exhibit 204), see trial transcripts DE # 82, pages 341-346.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. <u>U.S. v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004) (citing <u>Williams v. Kelly</u>, 816 F.2d 939, 946-47 (4th Cir.1987)).

Under the first prong of Strickland, we apply a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." <u>Id</u>. (citing <u>Strickland</u>, 466 U.S. at 689). For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. (citing <u>Strickland</u> at 687). The reasonableness of a lawyer's trial performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." <u>Id</u>. (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986); <u>Strickland</u>, 466 U.S. at 689).

In order to establish prejudice under Strickland 's second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." <u>Id</u>.

The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." Id. at 689. As the Strickland Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689. (Citations ommitted).

1.    Ground One

Petitioner first claims that he was "deprived effective assistance of counsel by appointed counsel's failure to move for dismissal based on double jeopardy issues." After careful review and consideration, the Court finds this claim to be without sufficient legal merit. Petitioner was not placed in double jeopardy due to his federal trial on mail fraud and wire fraud charges after he was acquitted of murder in state court. Petitioner and his brother Davy Hanna were tried in South Carolina state court for the murder of Teresa Powell Hanna. The state trial judge granted the Hannas' motion for a directed verdict before the case was submitted to the jury. Subsequently, a federal grand jury indicted the Hannas on the instant charges based on their conspiracy to murder Teresa Powell Hanna and collect on life insurance policies which named Davy Hanna as the beneficiary. Petitioner's acquittal on state murder charges did not preclude his being indicted on federal mail and wire fraud charges. This is true even though the federal charges were based on fraudulent attempts to profit from life insurance proceeds procured by the murder of Petitioner's sister-in-law — the

murder for which he was tried in state court. The Fourth Circuit has held that a defendant's acquittal on state charges "does not bar reconsideration of a factual issue presented in that case in a subsequent federal prosecution for different offenses." United States v. Ricks, 882 F.2d 885, 889-90 (4th Cir. 1989) (Government was permitted to introduce evidence concerning defendant's possession of heroin despite his acquittal in state court on narcotics charges stemming from that possession). Thus, the fact that a state judge found the evidence insufficient to show that Petitioner was complicit in his sister-in-law's murder did not preclude the district court from reconsidering that issue in connection with Petitioner's federal fraud charges. The doctrine of collateral estoppel embodied in the Fifth Amendment's Double Jeopardy Clause does not apply to separate prosecutions by dual sovereigns. Id. at 890; see also Heath v. Alabama, 474 U.S. 82, 89 (1985) ( "[T]he Court has uniformly held that States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' and not from the Federal Government.") (citation omitted); Rinaldi v. United States, 434 U.S. 22, 28 (1977) ("[T]he Constitution does not deny the State and Federal Governments the power to prosecute for the same act.").

2.     Ground Two

In his second ground for relief, Petitioner claims that he was "deprived effective assistance of counsel by appointed counsel's failure to move for dismissal based on vindictive prosecution." Petitioner's claim for relief in this ground is likewise without sufficient legal merit. The Court cannot conclude that the United States vindictively prosecuted Petitioner. Just as Petitioner's federal indictment did not expose him to double jeopardy, his federal indictment was not a case of vindictive prosecution. To establish prosecutorial vindictiveness, Petitioner must show, "through objective

evidence," that (1) the prosecutor acted with "genuine animus" toward him and (2) he "would not have been prosecuted but for that animus." United States v. Jackson, 327 F.3d 273, 294 (4th Cir. 2003) (quoting United States v. Wilson, 262 F.3d 305, 314 (4th Cir.2001)). "If a defendant is unable to demonstrate the required animus, he may still present evidence of 'circumstances from which an improper vindictive motive may be presumed.'" Id. "In describing when a given set of circumstances should give rise to a presumption of vindictiveness, [the Fourth Circuit has] articulated the principle that 'such a presumption is warranted only when circumstances warrant it for all cases of the type presented.'" Id. (quoting Wilson, 262 F.3d at 315). Moreover, "the circumstances must be evaluated against the background presumption that charging decisions of prosecutors are made in the exercise of broad discretion and are presumed to be regular and proper." Id. (quoting Wilson, 262 F.3d at 318).

In Jackson, for example, the defendant initially was tried in state court for the murder of a woman in a national forest. The defendant was convicted by a jury and sentenced to death, but a state appellate court vacated the conviction and sentence based on a Miranda violation. The state prosecutor then struck a plea bargain with the defendant, under which the defendant pled guilty to lesser charges and received a sentence of slightly more than thirty years. A federal grand jury subsequently returned an indictment charging the defendant with use of a firearm during and in relation to a crime of violence; the federal charge was based on the same conduct underlying the state murder charge. Upon being convicted by a jury again and sentenced to death, the defendant appealed, claiming in part that his federal prosecution was vindictive. The Fourth Circuit rejected this claim, holding that the United States permissibly determined that "its interests were not vindicated" by the defendant's state sentence. Likewise, in this case, Petitioner has pointed to no facts suggesting the

Government acted with "genuine animus" towards him; nor has he pointed to "circumstances from which an improper vindictive motive may be presumed." According to Petitioner, the Government adopted a "vindictive" view that "the Movant's acquittal in the first prosecution meant the Movant thought he got away with murder and they were adamant on proving him wrong." Doc. # 142, p. 8. This conclusory statement suggests only that the Government proceeded on the view that its interests "were not vindicated" by the results of Petitioner's state trial. If that were enough to show a vindictive motive, than any federal prosecution brought subsequent to a state prosecution would be vindictive.

3.    Ground Three

        In his third ground for relief, Petitioner claims that he was "deprived assistance of counsel at a critical stage of the proceedings, i.e. at arraignment/preliminary hearing; [and that] [a]s a consequence he was deprived of advocacy of probable cause issues."  After careful review and consideration, the Court concludes that this asserted ground for relief is without sufficient merit.  The minutes of Petitioner's arraignment reflect that, while he did appear without counsel, the court found that Petitioner qualified for appointed counsel. (Doc. # 10).  Petitioner entered a plea of not guilty at the arraignment, and five days later Attorney Coit Yarborough was appointed to represent Petitioner. (Docs. # 14, 18).  The Court cannot conclude that Attorney Yarborough's appointment five days after the arraignment prejudiced Petitioner. Because a federal grand jury had already returned an indictment against Petitioner, he was not entitled to a preliminary hearing to determine probable cause. The indictment meant that the grand jury had already found probable cause that Petitioner had committed the charged offenses. "This court has long held that the probable cause requirement may be satisfied either by a preliminary hearing or by indictment by a grand jury."

United States v. Soriano-Jarquin, 492 F.3d 495, 502 (4th Cir. 2007)(citing United States v. Mackey, 474 F.2d 55, 56-57 (4th Cir.1973)). "Because both procedures aim 'to insure the existence of probable cause before an accused is brought to trial,' it has been a 'long-standing rule that the return of an indictment by the grand jury eliminates the requirement of holding a preliminary hearing.'" Id.

4.    Ground Four

In his fourth ground for relief, Petitioner claims he was "deprived of effective assistance of counsel by appointed counsel's failure to move to properly sever defendants or otherwise move to require the Government to compartmentalize their case-in-chief against Petitioner from their case-in-chief against Johnny David Hanna in order to prevent improper or unfair spill-over, prevent confusing and inflaming the jury, and prevent a Confrontation Clause violation."  This Court concludes that this ground lacks sufficient merit as there was no basis for Petitioner's counsel to make a motion to sever.  Although Petitioner and his brother, Davy Hanna, were indicted together, Davy committed suicide prior to trial. Therefore, Petitioner was the only defendant brought to trial; there was no remaining co-defendant from which he could be severed.  Petitioner asserts that much of the Government's trial evidence concerned acts that Davy Hanna committed or statements that Davy Hanna made. However, in light of the fact that the Hanna brothers were charged in a conspiracy to commit mail fraud and wire fraud based on their attempt to collect life insurance proceeds from Davy Hanna's wife's murder, Davy Hanna's actions and statements in furtherance of the conspiracy were admissible against Petitioner.  Also, evidence of Davy Hanna's affairs would be relevant to show a motive for the murder of Davy Hanna's wife. This evidence would have been admissible against Petitioner, even if Davy Hanna had still been alive and if the Hannas had received separate trials.

5.     Ground Five

In his fifth ground for relief, Petitioner asserts that he was "deprived of effective assistance of counsel by appointed counsel's failure to prepare and present a comprehensive defense. As a consequence appointed counsel's opening statement, cross-examinations, and closing argument were deficient and individually or cummulatively [sic] prejudiced the defense." After careful review and consideration, the Court finds this ground to be without sufficient legal merit. Petitioner asserts that his trial counsel was deficient in his opening statement, in his cross-examination of the Government's witnesses, and in his closing argument. (Doc. # 142, pps. 16-22). In making his argument, Petitioner essentially puts himself in the shoes of defense counsel and recites what he would have said and asked. However, "[t]rial strategy decisions are not evaluated 'through the distorting effects of hindsight.'" Winston v. Kelly, 592 F.3d 535, 544 (4th Cir. 2010)(quoting Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008)).

As to trial counsel's opening statement, Petitioner argues that his attorney "did not state what he believed the evidence would show nor did he outline what the [defense evidence would be]." Doc. # 142, p. 16. It is not unreasonable for trial counsel's opening statement, which necessarily is delivered before any evidence or testimony has been presented by the Government who has the burden of proof, to decline to present a detailed outline of the expected evidence. Even a defense attorney's decision to waive opening statement altogether "is essentially tactical in nature, and not objectively unreasonable." Huffington v. Nuth, 140 F.3d 572, 583 (4th Cir. 1998).

As to trial counsel's cross examinations of certain witnesses, Petitioner next lists an assortment of conclusions and inferences that he claims "effective cross-examination" would have established. (Doc. # 142, pps. 18-21). After completing this list, he summarily claims that the cross-

examinations of Scott Dangerfield, Janet [sic, Janis] Ross, Anthony Driggers, Kathleen Street, Keith Lutchen, Shane Prince, Kenneth Whitler, Jennifer Stone [sic, Stoner], Paul Rickey, Brandon Lee, Shawn Harrell, Phil Hanna, "and others" was ineffective. Id. at 21. The record reveals that defense counsel thoroughly cross-examined each of these witnesses. Moreover, Petitioner offers nothing but speculation that additional questioning of these witnesses would have established his list of conclusions and inferences.

As to trial counsel's closing argument, Petitioner argues that the argument was unreasonable, and that his attorney "told the jury that the Government did a good job knocking down everything he would stand there and try to explain in [his] defense." (Doc. # 142, p. 22). Hanna mischaracterizes his attorney's remarks. Near the beginning of his closing argument, defense counsel stated:

> As you see, the stakes are high in this case. The Government is about to get up and they are going to make the final argument, they get the first argument, they get the final argument, and they are going to try to inflame you, and they are going to try and knock down everything I stand up here and try to tell you. And he's already done a good job, but I say we still have some points, and I'm here to try to explain to you what his defense is.

Trial Transcript, closing arguments, 02/22/07, at 58. (Doc. # 141).

Taken in context, it is reasonable to conclude that defense counsel did not tell the jury that the Government had done a good job in knocking down all of Defendant's arguments. Rather, counsel was imploring the jury to listen to Defendant's defense. He was explaining that although the Government got the first and final word during closing, the jury should consider the merits of the defense argument. Defense counsel tempered his comment that the Government had "done a good job" in the first segment of closing argument with his admonition that the defense still had "some points" to make. Assuming defense counsel was trying to acknowledge any favorable impression the

jury may have taken from the Government's closing, and that he was trying to soften that impact by reminding the jury that there was another side to the story, the Court concludes that this was a reasonable approach.

Petitioner also claims that his counsel "unreasonably agreed with the Government's theories and extensively argued the Government's case against Davy, knowing that evidence was being imbued on [Petitioner]." Doc # 142, p. 22. A primary theme of defense counsel's closing argument was that although Davy Hanna conspired to murder Teresa Hanna, Petitioner had nothing to do with the conspiracy. The Government indicates that Defense counsel was faced with a mountain of evidence that had been admitted at trial proving that Davy indeed plotted to have his wife murdered; such that Defense counsel had to make a decision: Either ignore this evidence and deny that Davy was involved in the murder, or concede the case against Davy and try to distance Petitioner from his brother. The Court is sufficiently persuaded that defense counsel's adoption of the latter course was a reasonable approach.

Because Davy was deceased and unable to defend himself, Petitioner's attorney could concede the Government's evidence against Davy without any rebuttal. This allowed Petitioner's counsel to preserve his credibility by not attempting to deny Davy's involvement; he could also use Davy as an outlet for any dismay the jury felt about Teresa's murder. Moreover, Petitioner's counsel could focus his argument on highlighting the lack of any direct involvement by Petitioner in Davy's attempts to collect the insurance money. He could also take the focus away from Petitioner by arguing that Davy could have recruited his paramour Nannette Galey's son, Alton Davis, to shoot Teresa. Although Petitioner may now disagree with these tactics, he has no persuasive basis to successfully argue that his attorney's strategic decision deprived him of his right to effective counsel.

6. <u>Ground Six</u>

In his sixth ground for relief, Petitioner asserts that his "Appointed counsel was constitutionally ineffective for failing to file pretrial motion(s) to suppress gunshot residue ("G.S.R.") evidence, and was subsequently ineffective for failing to call an independent G.S.R. expert in movant's defense." Petitioner asserts that counsel should have moved to suppress the Government's G.S.R. evidence under Rule 403 as being more prejudicial than probative. Doc. # 142, p. 23. After careful consideration, the Court cannot conclude that counsel was ineffective in this regard and finds this claim to be without sufficient merit. Jennifer Stoner of SLED testified on behalf of the Government as a G.S.R. expert. Stoner was the SLED analyst who examined the results of the G.S.R. test performed on Petitioner. Stoner testified that the initial analysis of Hanna's G.S.R. test, which involved swabs taken from Hanna's hands, came back negative. Trial Transcript, 02/13/07, at 169. Stoner then testified that a subsequent analysis of the particle lifts taken from Hanna's hands (another part of the test which involved a sticky pad being applied to Hanna's hands) revealed the presence of two spherical G.S.R. elements — one lead particle and one antimony particle. <u>Id</u>. at 178. Stoner explained that SLED reporting procedures at that time required her to report the results as inconclusive. <u>Id</u>. at 183. There was no basis for Petitioner's counsel to move for suppression of the Government's G.S.R. evidence under Rule 403, and no basis to conclude such a motion would be successful. Stoner's testimony on G.S.R. elements recovered from Petitioner was directly relevant to the issue of whether Petitioner had fired a firearm the morning of Teresa Hanna's murder. Although Stoner listed the results of the test as inconclusive because the initial test for G.S.R. from Petitioner's hands was negative, it was up to the jury to assign whatever weight (if any) to the evidence of lead and antimony particles found on Hanna's hand. Also, Petitioner's trial

counsel was not ineffective in deciding not to call its own G.S.R. expert to testify. The Government's expert testified that the G.S.R. test conducted on Petitioner was inconclusive. Petitioner's counsel vigorously cross-examined the Government's expert and it is appropriate to conclude that counsel made a reasonable, strategic decision that, given the perceived weakness in the Government's G.S.R. evidence, calling its own expert would be unhelpful and could place undue emphasis on G.S.R. in the jury's minds. See Yarborough Affidavit, Attachment A, at 1-2 ("I found great strategic value in the Government spending so much time introducing evidence of gunshot residue that did not exist, especially in light of the Government's failure to introduce evidence that all of the trace elements found in a normal gunshot residue are not present in some .22 caliber rimfire ammunition according to my research.").

7.    Ground Seven

In his seventh ground for relief, Petitioner asserts that his "[a]ppointed counsel was ineffective for failing to call the following witnesses in the Movant's defense: (1) Sylvester Davis, III; (2) Patricia Miles; (3) Daniel Franklin Hardy." The Court cannot conclude that Petitioner's trial counsel was not ineffective for failing to call these additional witnesses, and concludes this claim is without legal merit.

According to Petitioner, Officer Davis would have testified (based upon his incident report) that Hanna and other family members "were near the body" when he arrived. (Doc. # 142, p. 26). Petitioner claims that Miles would have testified that Nannette Galey and Davy Hanna were having an affair before Teresa Hanna's murder. Id. at 27. Petitioner claims that Hardy would have testified that Alton Davis made comments to him indicating that he (Alton Davis) was involved in Theresa Hanna's murder. Id. In his affidavit, Coit Yarborough, Hanna's trial counsel, explains why he did

not call these individuals as witnesses. As to Sylvester Davis III, Yarborough says that he "found it irrelevant whether Mr. Hanna was close to the victim's body." Yarborough Affidavit, Attachment A, at 2. Moreover, Yarborough states that Officer Davis's incident report includes the fact that Hanna was "very hesitant and acted like he did not want to sign the crime scene log." Id. Yarborough reasonably believed that the jury could interpret this fact as "indicative of guilt" and therefore chose not to call Davis. Id. As to Patricia Miles, Yarborough says that he did not need her testimony because Nannette Galey's sons both testified about whether Galey was seeing Davy Hanna prior to Teresa Hanna's murder. Id. Cliff Canty, Jr. testified that Galey and Davy Hanna were "hugging and kissing at Nannette's house while Teresa was still alive." Id. Alton Davis testified that "Davy Hanna's clothes had been moved into Nannette's house before Davy moved in after Davy was charged with murder in state court." Id. As to Daniel Franklin Hardy, Yarborough recites several reasons why he did not call this witness. First, Yarborough believed that the contradictory testimony of Nannette Galey, Alton Davis, and Cliff Canty, Jr. already supported the defense theory that Alton Davis could have been the shooter. Id. Second, Yarborough felt that Hardy lacked credibility due to his status as a jailhouse witness. Yarborough had already cross-examined several of the Government's witnesses based on the fact that they were jailhouse informants. Id. at 2-3. Third, Yarborough investigated Hardy's claim that Alton Davis told him that Davy Hanna had disposed of the murder weapon at the Tupperware manufacturing plant where Davy Hanna worked. Yarborough determined that it would not have been possible for a .22 caliber rifle to have been dismantled and disposed of without notice at the plant. Yarborough believed that this further undermined Hardy's credibility. Id. at 3. Based on these facts, this Court does not conclude that Attorney Yarborough was ineffective for declining to call these three witnesses. There was a reasonable basis for not calling these witnesses.

8.    <u>Ground Eight</u>

In his eighth ground for relief, Petitioner asserts that his "Appointed counsel was ineffective for failing to move to suppress the testimony of all the Government's jailhouse informant's and subsequently was ineffective for failing to call Carl P. Locklear and Jeremaine Greene to show that the testimony of the jailhouse informant's was not worthy of confidence." After careful review and consideration, the Court does not conclude that Petitioner's trial counsel was ineffective for failing to move to suppress the Government's informants' testimony, and counsel was not ineffective for failing to call Carl Locklear as a witness. Accordingly, this ground for relief is without sufficient legal merit. According to Petitioner, Locklear told him that the Government "was actively seeking inmates who would testify against [Petitioner] in exchange for a reduction in their sentences." (Doc. # 142, p. 28). Petitioner claims that Locklear provided him with a letter authored by Jeremaine Greene in which Greene attempted to recruit Locklear as a witness against Petitioner. <u>Id</u>. This letter, Petitioner claims, contained information about his case and instructed Locklear to "jump on the Hanna case, it's money in the bank!" <u>Id</u>. Petitioner contends that his trial counsel should have moved to suppress the testimony of the Government's jailhouse informants because Greene's letter undermined the reliability of these witnesses. Alternatively, Petitioner argues that his counsel should have called Locklear as a witness so he could testify about Greene's attempt to recruit him as a witness against Petitioner. In his affidavit, Yarborough states that, although Petitioner had assured him that he was not discussing his case with other inmates, Yarborough interviewed Jermaine Greene and discovered that Petitioner was in fact discussing his case with his fellow inmates. Yarborough Affidavit, Attachment A, at 3. Yarborough learned that Greene knew facts about Petitioner's case, including the type of weapon used in the murder. <u>Id</u>. Yarborough did not call

Locklear as a witness because Greene's attempt to recruit him as a witness was unsuccessful, and Locklear did not testify against Petitioner. Evidence of Greene's letter thus would have been "useless as evidence against Mr. Locklear." Id. at 3-4. Moreover, calling Locklear could have caused other problems for Petitioner's case. It is possible the Government could have raised a successful hearsay challenge to the introduction of Greene's letter via Locklear's testimony. But even if the letter had been admitted, it could actually have been detrimental to Petitioner's case because it could have supported the inference that Greene learned these details about the murder of Teresa Hanna from Petitioner. Indeed, this was the conclusion Yarborough himself reached. Finally, Greene's letter did not provide a basis for Petitioner's trial counsel to move to suppress the testimony of the Government's jailhouse informants. The credibility of these witnesses, even in light of Greene's letter, was an issue for the jury's determination. Counsel's reasons for choosing not to call certain witnesses were reasonable.

9.      Ground Nine

In his ninth ground for relief, Petitioner asserts that his "Appointed counsel was ineffective for failing to object to improper comments/remarks made by the Government and was ineffective for failing to move for a mistrial based on prosecutorial misconduct." The Court does not find this claim to be meritorious. Petitioner argues that his trial counsel was ineffective for failing to object to certain comments made by Government counsel during closing argument, and for failing to move for a mistrial based on these comments. Doc. # 142, p. 29. Specifically, Petitioner lists several statements by Government counsel that he contends constitute improper vouching for witnesses or misrepresentations of the evidence. All of these statements, however, were properly part of the Government's argument based on the evidence presented at trial.

First, Petitioner claims the Government vouched for its jailhouse-informant witnesses when counsel suggested that these witnesses had a motive to testify truthfully based on their plea agreements. "[I]t is impermissible for a prosecutor to indicate her personal belief in the credibility of Government witnesses or to elicit one witness' opinion that another witness has told the truth." United States v. Collins, 415 F.3d 304, 307 (4th Cir. 2005) (quoting United States v. Hayes, 322 F.3d 792, 800 (4th Cir. 2003)). However, "[p]resenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. . . . Use of the 'truthfulness' portions of [a plea agreement] becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." Id. at 308 (quoting United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990)). Government counsel did not express a personal opinion regarding the witnesses' credibility, nor did he suggest that he had personal knowledge of facts outside the record that might relate to their testimony. Just as defense counsel would argue that these witnesses had a motive to lie to curry favor with the Government, the Government argued that the witnesses had a motive to tell the truth so as not to subject themselves to perjury charges or jeopardize their cooperation agreements. (Doc. # 141, Trial Transcript, 02/22/07, at 51- 53). This was a permissible argument to make to the jury, who would ultimately judge the witnesses' credibility.

Second, Petitioner argues that Government counsel vouched for its law enforcement witnesses when he stated that they "testified truthfully." The AUSA did not couch this statement in terms of his personal opinion or knowledge. In fact, a reading of this comment, taken in context, shows that the AUSA was actually exhorting the jurors to make their own independent evaluation

of the police officers' credibility. This comment came in the Government's rebuttal argument. The AUSA was responding to an argument from defense counsel that certain law enforcement officers appeared "hostile" to the defendant during their testimony. The AUSA stated:

> He keeps referring to these law enforcement officers as being hostile. Just as the judges of the facts in this case, ladies and gentlemen, you're the judges of the credibility of the witnesses, not the lawyers, and not Judge Wooten. You jurors individually and collectively. I submit to you that every law enforcement officer that took that witness stand, from Florence County Sheriff's Office, SLED, were professional men and women that were doing their jobs, and testified truthfully. Hostile? You be the judge.

> (Doc. # 141, Trial Transcript, 02/22/07, at 117-18).

Taken in context, the AUSA was simply rebutting the defense argument that certain witnesses were biased against the defendant. The AUSA took the unremarkable step of suggesting that the jury should accept the testimony of the Government's witnesses, while acknowledging that their credibility was for the jury's determination alone.

Third, Petitioner contends that the Government counsel made an improper comment in stating that Petitioner Hanna never got close to Teresa Hanna's body at the crime scene. This was a disputed factual issue, as Shawn Harrell testified that Hanna told him that he had lifted up the sheet on Teresa Hanna's body and got blood on his hands, which he wiped on his jeans. No witness, however, testified that they saw Hanna lifting the sheet or otherwise getting close to the body. Trial Transcript, 02/22/07, at 119 ("You heard the testimony from those E.M.S. people, that Darry Hanna never, ever, ever got close to that body, not even close."). The AUSA's comment was thus a fair characterization of the evidence.

Fourth, Petitioner claims the Government committed misconduct in stating that Ronnie Hanna stopped at Teresa Hanna's house because he saw Petitioner fleeing the scene. Ronnie Hanna

testified that he stopped because he saw someone in a "hot pink" outfit lying on the ground. But the Government was not mischaracterizing Ronnie Hanna's testimony. Rather, the Government was free to argue its theory of events, even if that theory conflicted with portions of Ronnie Hanna's testimony. The AUSA argued that Ronnie Hanna would have had difficulty noticing a body on the ground down the long driveway in the morning fog, unless his curiosity had been piqued by Petitioner' hasty exit. The Government did not state that Ronnie Hanna testified to having seen Petitioner leaving the scene.

Fifth, Petitioner argues that it was "fundamentally unfair and a violation of due process" for the Government to argue in closing that Nannette Galey and Ronnie Hanna were "involved and were covering up the crime." Doc. # 142, p. 30. Petitioner's argument seems to be that the Government must disclose its closing argument to the defense at some point prior to the argument's delivery. This contention is without merit. The Government may comment on the testimony and evidence presented at trial without consulting the defendant first. Nothing in the Government's closing argument changed the counts of the indictment or the elements of the offenses for which Petitioner was charged.

Finally, Petitioner claims that the Government repeatedly asked the jury to "speculate and use conjecture to reach their decision." Doc. # 142, p. 30. In essence, Petitioner disagrees with the inferences the Government drew from the evidence in the record. According to Petitioner, the Government inappropriately argued that the evidence pointed to his guilt. The Court finds this entire claim to be without merit.

10.   <u>Ground Ten</u>

In his tenth ground for relief, Petitioner asserts that his "[a]ppointed counsel was ineffective

for failing to zealously advocate Motion for Judgment of Acquital. Petitioner contends that his

counsel was ineffective for making a "boiler plate motion . . . without stating any grounds for his

motion" and without "argu[ing] the merits whatsoever." Id. Petitioner's counsel, Coit Yarborough,

made motions for judgment of acquittal both at the end of the Government's case and at the end of

the defense case. He did not go into details or specifically review the evidence that had been

presented. Both motions were denied. In his affidavit, Yarborough states:

> I made the appropriate motion at the appropriate time, and it was then the district court's duty to view all of the evidence, direct and circumstantial, in the light most favorable to the Government and determine if it was supported sufficiently by which a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. It was obvious that Judge Wooten was taking notes throughout the trial, just as I was. I feel I made the appropriate motion and took adequate action to protect Mr. Hanna's interests.

> Yarborough Affidavit, Attachment A, at 4.

As Yarborough indicates in his affidavit, once he made the motions for judgment of acquittal, this

Court had a duty to evaluate the sufficiency of the Government's evidence. The Court was fully

aware of all the evidence that had been presented and denied the motions as indicated in the record.

11.    Ground Eleven

In his eleventh ground for relief, Petitioner asserts that his "[a]ppointed counsel was

ineffective for failing to file pretrial motion(s) to correct or make proper the indictment, and

subsequently ineffective for failing to question the jury instructions, and subsequently ineffective for

failing to challenge the sentence." Petitioner argues that the indictment, jury instructions, and

sentence in his case were all infirm because his trial was "essentially a first degree murder trial"

although the Government charged him on mail fraud and wire fraud charges.  (Doc. # 142, p. 32).

Petitioner contends that the Government should have indicted him for murder and that the district

court should have instructed the jury on the elements of murder. Otherwise, Petitioner reasons, the district court should not have been able to reference the Guideline range for murder in sentencing him. Id. at 33. The Court concludes this argument is without merit. The Government had probable cause to charge Petitioner with the mail fraud and wire fraud counts, and the Government presented sufficient evidence at trial for the jury to find Petitioner guilty beyond a reasonable doubt as to those counts. The Government's decision to pursue the charges contained in the indictment was a valid exercise of prosecutorial discretion. There was no basis for Petitioner's counsel to challenge the indictment or jury instructions just because Petitioner believed that the Government should have charged him with murder. Moreover, pursuant to U.S.S.G. 2B1.1(c)(3), a cross reference to the guideline for First Degree Murder, which is found at U.S.S.G. 2A1.1(a), was appropriately applied based on the facts of this case.

12.    Ground Twelve

In his twelfth ground for relief, Petitioner asserts that his "[a]ppointed counsel was ineffective for failing to introduce at trial tape recorded conversations between Tom Redmond and David Bushacre, as well as evidence that David Bushacre commited [sic] suicide."  Petitioner contends that these tapes would have proved that Redmond and Bushacre made "derogatory comments about the victim and how they did not want her in the position of City Administrator." (Doc.# 142, p. 34).  In his affidavit, Coit Yarborough, Hanna's trial attorney, states:

> After considerable investigation I did not consider an accusation plausible that either Mr. Bushacre or Mr. Redmond were potential murderers of Teresa Powell Hanna. This would have constituted a "shotgun" defense in which one attempts to place guilt on everyone possible but the defendant. It is my belief that a shotgun defense is completely ineffective. I found that Alton Davis was the person who most likely committed the murder, and it appears to me that an abundance of evidence still supports my theory.

> Yarborough Affidavit, Attachment A, at 4-5.

Thus, Attorney Yarborough made a reasoned, strategic decision not to introduce the conversation because it would have undermined his theory that Alton Davis was the killer. After careful review and consideration, the Court finds that this ground for relief is without sufficient legal merit.

13.    Ground Thirteen

In his thirteenth ground for relief, Petitioner asserts that "[a]ppointed counsel was ineffective for failing to call in the Movant's defense an independant [sic] expert in the area of bloodhound handling and tracking." Petitioner contends that a defense expert would show that the Government expert's conclusions were "erroneous." Doc. # 142, p. 35. In his affidavit, Yarborough states that he:

> "found more strategic value in noting that the scent dog found nothing leading into the yard or out of the yard, but merely found a pile of excrement behind a barn. Introducing more evidence could have merely served to assist the Government in building a position that did not exist."

Yarborough Affidavit, Attachment A, at 5.

Petitioner can only speculate what an independent expert might have concluded. Furthermore, calling another expert might have placed undue emphasis on the issue in the jury's minds. Yarborough thoroughly cross-examined the Government's bloodhound handler, and his decision to leave it at that was a reasonable strategy. Accordingly, the Court finds this ground to be without merit.

14.    Ground Fourteen

In his fourteenth ground for relief, Petitioner asserts that he was "deprived of effective assistance of counsel on direct appeal. Appointed Appellant counsel was ineffective by failing to raise the following issues on direct appeal:

A. Whether the Trial Court erred in denying the multiplicity defense counsel raise[d] pretrial, at trial and at sentencing.

B. Whether the Trial Court erred by allowing the Government to introduce an unrelated firearm at trial (Government Trial Exhibit 204), see trial transcripts DE # 82, pages 341-346."

The Court does not conclude that appellate counsel was ineffective as there was no meritorious basis for appellate counsel to make these arguments. Multiplicity is "the charging of a single offense in several counts." United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993). "The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense; hence reversal is warranted if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments." Id. Petitioner's trial counsel moved to dismiss the indictment, arguing that many counts were multiplicitous because "[t]he series of repeated mailings referred to in the counts that are charged as separate crimes are merely part of one transaction, that is, separate mailings to one insurance company, and therefore a single crime." Doc.# 56. However, as to both mail fraud and wire fraud, courts have held that each use of the wires or mail constitute a separate offense. United States v. Garlick, 240 F.3d 789, 793 (9th Cir. 2001); see also United States v. Alston, 609 F.2d 531, 535-36 (D.C.Cir. 1979) ("The mail and wire fraud statutes prescribe a penalty for each use of the mails or wires...."); United States v. Luongo, 11 F.3d 7, 9 (1st Cir. 1993) ("'It is well established that each use of the wires constitutes a separate crime under 18 U.S.C. § 1343, even if the several uses are in pursuance of but one criminal enterprise.'") (quoting United States v. Fermin Castillo, 829 F.2d 1194, 1199 (1st Cir. 1987)); United States v. Calvert, 523 F.2d 895, 914 (8th Cir. 1975) ("It is well settled that each use of the mails is a separate offense under the mail fraud statute.... The same is true of the use of the wires under the wire fraud statute ....") (internal citations omitted). Thus, a multiplicity challenge on appeal would have failed on the merits.

Similarly, any challenge to the district court's admission of a .22 caliber long rifle for demonstrative purposes would have been meritless. The Government did not suggest that the rifle was the murder weapon. Rather, several witnesses testified to having seen an identical-looking rifle in the shed behind Davy Hanna's home. The Government's experts identified the rifle as being the type of rifle that could have fired the spent cartridges found at the crime scene. Petitioner offers no persuasive argument that the use of this rifle for demonstration purposes could have been prejudicial to him. See United States v. Russell, 971 F.2d 1098, 1105 (4th Cir. 1992) (not abuse of discretion for district court to admit a gun similar to the one that defendant purchased); United States v. Cunningham, 423 F.2d 1269, 1276 (4th Cir. 1970) ("The lack of positive testimony to identify the gun as the gun used in the robbery does not preclude its admissibility. There was ample testimony of the fact that a weapon was used in the commission of the crime and there was ample evidence of the similarity between the gun admitted and the gun which was used. The testimony as to similarity warranted admission.").

This Court has carefully considered each of Petitioner's grounds for relief. As previously noted, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)). This Court is not sufficiently persuaded that Petitioner has satisfied either prong in relation to any of his asserted grounds for relief. In each instance Petitioner has made an assertion that counsel has failed to do something that Petitioner feels he should have done, but he has not shown that counsel's

performance fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.

## <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED** (Doc. # 142) and the Government's motion for summary judgment is **GRANTED** (Doc. # 153). This action is hereby **DISMISSED**.[2]

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2253. Applying the provisions set forth at 28 U.S.C. § 2253 (c), this Court concludes that it is appropriate to issue a certificate of appealability as to all issues raised herein.

**IT IS SO ORDERED**.                                   <u>s/Terry L. Wooten</u>
                                                        TERRY L. WOOTEN
July 12, 2012                                           United States District Judge
Florence, SC

---

[2]After careful review and consideration, Petitioner's (1) motion for depositions and an evidentiary hearing; and (2) motion for discovery are hereby denied. Docs. # 162 and # 164. Petitioner's motion to submit the affidavit of Cindy C. Woodward in support of his Title 28 U.S.C. Section 2255 motion is granted. (Doc. # 163). The Court has fully considered all filings submitted by Petitioner.